The opinion of the Court was delivered by
Withers, J.
The prisoner has been convicted of inveigling, stealing, and carrying away a slave. His appeal has commanded that consideration, which can never be denied, to a conviction of a capital felony, which is brought under the review of this tribunal. The result of that consideration is now to be pronounced.
1. The motion in arrest of judgment. This goes upon the footing that no value is affixed to the slave stolen, by allegation in the indictment.
In the case of the State vs. Miles, (2 N. & McC. 1,) it was a ground of appeal that the judge on circuit refused to instruct the jury, that the verdict might find the value of the slave to be under twelve pence. On appeal it was adjudged, there was no error therein, for that the penalty of death, without benefit of clergy/ was the judgment of the law, irrespective of such a verdict.
Where the sentence to be pronounced, the consequences to the sovereign who prosecutes, and those, present or future, which the conviction visits upon the condémned, are wholly independent of greater or less value, alleged or proved, in property stolen, is not conceivable what sound reason can be suggested, applicable to any species of larceny, that shows the *433 necessity or the convenience of alleging or proving value. The reason why this should he done, and must be done wherever the grade of the offence is ascertained by the value, is most manifest; and, therefore, when the larceny is at common law, and is or is not grand larceny, by the standard of 'a certain value, the case is wholly different from the present. Accordingly, we find it laid down in 2 Hale, 183, thus: “ If theft be alleged of any thing, the indictment .must set. down the value, that it may appear whether it be grand or petty larceny.” The right to claim clergy, and that being allowed the grave consequence that follows a second conviction; the doctrine of forfeiture of goods when and where that prevailed — all combined to give importance to the rule in larcenies at common law. We find the distinction well observed by our cases which have arisen under the statute upon stealing promissory notes, &c. It is in such cases required, that the rule as to grand and petit larceny shall be observed in indictments and convictions touching that class of offences; and, accordingly, it was observed, in the case of the State vs. Thomas, (2 McC. 527,) that “no other description of the thing in which the offence was committed is necessary to be stated in an indictment founded on a statute, but that contained in the statute itself, unless the value become necessary to fix the grade of the offence.” And the reason is, that the consequences arising from that description of larceny are, by the statute, graduated by the rule that distinguishes grand and petit larceny.
It is suggested, that allegation of value is material always, with a view to restitution. Of course it will be observed, that this is not material where the specific thing is to be restored. Restoration, by way of equivalent damages out of the estate of the felon awarded by judgment at the end of a prosecution, is altogether unheard of in this country.
Hawkins does say, (Yol. 2, p. 323,) It seems questionable whether it be needful to set forth the value of the goods in an indictment of larceny, for any other purpose than to show that *434 the crime amounts to grand larceny, and to ascertain the goods, thereby the better to entitle the prosecutor to a restitution. His right to restitution, where indictment was instituted, never did exist, at Common Law, for that was the suit of the king, and he had the goods, on conviction of felony, by forfeiture, and he might, and did, of his free grace, grant restitution of various sorts, as of heritable blood attainted, goods, &c. It was only by proceedings called “Appeal,” that restitution existed at Common Law, for that was the suit of the party. 3 Inst. 242. By 21 H. 8, c. 11, (now wholly repealed in England by Stat. 7 & 8 Geo. 4, ch. 27,) a Justice presiding at a conviction of felony, was empowered to issue a writ of restitution for the benefit of him who prosecuted, or procured prosecution and conviction. But such a writ has not been issued for more than two hundred years in England, as we léarn from 2 Haw. 241-2, and note 2. The Court orders restitution at the trial, and in default the owner resorts to trover. And although the aforesaid Statute of Henry 8th was made of force here, yet the practice of ordering restitution of stolen goods never prevailed here ; never, at any rate, since this State became sovereign and independent, as was said in Cannon vs. Burris, 1 Hill, 372; and for good reason. If restitution was an act of praiseworthy grace on the part of the sovereign, or of the sovereign and his parliament, through a justice and under Statute, that was because the goods were his by forfeiture; and since they never were forfeited to the State, and cannot be, by fundamental law, there is no room for the principle or the practice; and, therefore, if the said Statute of Henry ever proved useful or applicable, it was during a portion of our colonial existence, when the crown could take by forfeiture.
It is true, that to make an article the subject of larceny, at common law, it must have some value, though the very least is sufficient. Even if we apply this doctrine to the statutory offence under consideration, it is enough to remark, that value is inseparable from the allegation of the indictment, that a *435 slave was stolen, whereby the owner was deprived of his service; and such deprivation for the shortest time will constitute that element of the crime. Covington’s case, 2 Bail. 569.
There is indeed a peculiar value about a slave, one not common to property in general insomuch that á Court of Equity will decree a delivery specifically. The offence committed by the prisoner is in the least possible degree dependent upon value. If the property be of value to the owner, it is immaterial how it may be to the rest of the world. Rex vs. Clark, 2 Leach, 1036. It may indeed be regarded as approaching a great public mischief; for though a slave, inveigled and stolen, may perform as much work, and perchanGe command as much money, his allegiance is corrupted, he is a fit instrument of mischief, and the moral corruption may spread.
Neither upon reason nor authority can we allow that the motion in arrest of judgment is well grounded.
2. It i's insisted for a new trial, that the admissions of the prisoner should have been excluded; first, because they were not free and voluntary, in a degree to render them admissible; and second, they were reported by a bystander to whom they were not directed, and who did not hear a previous conversation.
If this prisoner should be considered as unduly seduced by the blandishment of hope, or overawed by the terror of authority, the rule which receives such admissions will be reduced to dimensions so narrow, as to render it scarcely worthy to be retained, as .affording a principle in the law of evidence. Chief Baron Eyre describes the confession which ought to be rejected as one “forced from the mind by the flattery of hope, or by the torture of fear.” Warrickshall’s case, 1 Leach. 299. The disqualifying circumstances that attach to the evidence must, in this as in all other cases, where competency is the question, be addressed to the mind of the Court. So varying are the circumstances themselves, and so variant are the effects of the same circumstances upon different *436 prisoners, that a rule, a priori, is quite impracticable; and there is this protection to the prisoner, that in any case the circumstances of the confession, or admission, go with the evidence itself to the jury; and like every other description of evidence, it will command more or less faith as a vehicle of truth, according as it is seen with good sense and impartiality through all the circumstances that accompany it. The views of this Court, however, are so fully and carefully expressed in the cases of Kirby, 1 Strob, 155, 378, and of Vaigneur, 5 Rich. 391, upon this subject, that it would be but repetition to indulge in a re-argument; and those cases are full authority to carry the admissions of this prisoner before the jury.
But it is again objected, that Tollison, an interlocutor, and not Eant, a bystander, could alone be heard to disclose what was said. We are aware of no semblance of authority, and perceive no plausible reason for this position. All that a party said in the conversation reported must be heard, i. e., all the witness can repeat. -But it would be wresting such rule of evidence from its sphere to apply it to the point now made. As well might we say, that none shall be heard because the witness cannot repeat all for want of memory, as that he shall say nothing because he did not hear all. When all is not heard, or not remembered, it is the less satisfactory; but surely this is only matter of observation to the jury. But to our surprise, plain as this matter is, we have direct authority in Covington's case, 2 Bail. 569. The present case warrants the further remark, that it was another and distinct interview, in another room, which the witness examined did not hear; and there was not any evidence, that it even related to the subject matter of the testimony heard, or that there was any conversation about the crime imputed; and besides, it is fair to say, that the prisoner had ready and efficient means to compel the attendance of the other witness, if he deemed it material that he also should, have been heard.
3. The only other matter of appeal, not obviated by the *437 report, is the complaint, that there was no evidence that the offence was committed within the venue. Nobody said he saw the act committed in Union District, and it is presumed nobody will contend that this was the necessary description of testimony. But it was in proof, that the owner of the negro and the prisoner dived in Union District, the latter near the boundary, it is true. If the prisoner’s craft left no other evidence upon this point; if he who knew the fact (provided it were otherwise) afforded no other evidence, why the jury must work upon the materials before them; they alone could resolve a question of technicality ; they did, and it cannot -be said there was no evidence. If crimes of furtiveness, secrecy, and cunning, will reduce the investigation of them to scanty materials, the law must not thereby be enervated, and the progress of justice arrested. And surely if such contrivances of criminals have forced the law to deal with circumstances to ascertain the substance of guilt, the like material may be properly used to ascertain the locality of that guilt.
We are thus conducted to the conclusion, that neither in law nor in fact, are the prisoner’s motions in arrest of judgment, or for a new trial, well founded; and they are, therefore, dismissed.
O’Neall, Wardlaw, Whither, Glover and Munro, JJ., concurred.

Motions dismissed.